**CARLSON LYNCH SWEET**
**KILPELA & CARPTENTER, LLP**
Todd D. Carpenter (CA State Bar No. #234464)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: 619-756-6994
Facsimile: 619-756-6991
tcarpenter@carlsonlynch.com

Karen H. Riebel (MN State Bar No. #219770)
Kate M. Baxter-Kauf (MN State Bar No. #0392037)
(*pro hac vice* applications forthcoming)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Ave. South, Suite 2200
Minneapolis, MN  55401
Tel: (612) 339-6900
Fax: (612) 339-0981
khriebel@locklaw.com
kmbaxter-kauf@locklaw.com

*Attorneys for Plaintiff*
(Additional Counsel listed on signature page)

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ADAM SAVETT, Individually and on Behalf of Others Similarly Situated,<br><br>            Plaintiff,<br><br>vs.<br><br>YAHOO! INC.,<br><br>            Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **Gross Negligence;**<br>2. **Bailment;**<br>3. **Breach of Implied Contract;**<br>4. **Breach of Express Contract;**<br>5. **Violation of Ohio Consumer Sales Practices Act (Ohio Rev. Code Ann. §§ 1345.02(A), (B)(1), and (2), *et seq.*);**<br>6. **Violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*); and**<br>7. **Declaratory Relief** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEMAND FOR JURY TRIAL**

Plaintiff Adam Savett, individually and on behalf of all others similarly situated, by his undersigned attorneys, brings this class action complaint against defendant Yahoo! Inc. ("Yahoo," the "Company," or "Defendant") based on personal knowledge as to himself and upon information and belief as to all other matters based on public reports and the investigation of counsel.

## NATURE OF THE ACTION

1.      Defendant Yahoo is a leading Internet company that provides Internet-based services to hundreds of millions of users on a regular and consistent basis. As part of its business, Yahoo collects and stores large volumes of sensitive personal information about its users, including the users' names, email addresses, telephone numbers, birth dates, passwords, and security questions linked to a users' account. Yahoo requires all of this information in order to create an account.

2.      Despite the fact that it requires, collects and stores sensitive personal information for hundreds of millions of users, the Company has failed to adequately protect its users or itself from data breaches. Indeed, Yahoo's security systems have been breached in the past, and the Company has demonstrated that it cannot adequately secure the personal information of its users.

3.      Despite Yahoo's promises to "take[] your privacy seriously," to "limit access to personal information about you to employees who we believe reasonably need to come into contact with that information to provide products or services to you or in order to do their jobs," and to "have physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information about you," Yahoo failed to live up to those promises and has failed to adequately protect is users' personal information.

4.      On September 22, 2016, Yahoo issued a press release in which it announced that a "recent investigation" confirmed that sensitive personal account information associated with at least **500 million user accounts** "was stolen from the

company's network in late 2014 by what it believes is a state-sponsored actor."[1] The stolen information included users' names, email addresses, telephone numbers, dates of birth, hashed passwords and, in some cases, encrypted or unencrypted security questions and answers. Reports indicate that this data breach was the largest from a single site in history.[2]

5.      As a result of Defendant's failure to establish and implement basic data security protocols, contrary to Yahoo's guarantees, its users' personal information is now in the hands of criminals and/or enemies of the Unites States, subjecting Plaintiff and the Class (as defined below) to the serious risk of identity theft in a wide variety of forms.

6.      Worse yet, despite the fact that the attack took place in late 2014, Yahoo was so grossly negligent in securing its users' personal information that it says that it did not even discover the incident until the summer of 2016. In other words, Defendant engaged in such severe misconduct that it evidently allowed unauthorized and malicious access to Plaintiff's and the Class members' personal information on Defendant's computer systems to continue unimpeded for ***nearly two years***.

7.      Circumstantial evidence suggests that certain Yahoo insiders ***did*** know of the breach long before it was disclosed, but hid it from the public until after a $4.8 billion sale of the Company to Verizon was announced in July 2016. Verizon has stated that it did not learn of the breach until September 20, 2016, and commentators have noted that "Verizon might want to lower the price it is paying because it wasn't notified of the hack sooner and doesn't yet know the full liability Yahoo and Verizon would face from victims of the hack."[3] Now countless media outlets report that

---

[1]   Yahoo, *An Important Message to Yahoo Users on Security* (Sept. 22, 2016), https://investor.yahoo.net/ReleaseDetail.cfm?&ReleaseID=990570 (last visited Oct. 13, 2016).
[2]   *See* Mark Fahey & Nicholas Wells, *Yahoo Data Breach is Among the Biggest in History*, CNBC (Sept. 22, 2016), http://www.cnbc.com/2016/09/22/yahoo-data-breach-is-among-the-biggest-in-history.html (last visited Oct. 13, 2016).
[3]   Matt Hamblen, *Verizon Learned of Massive Yahoo Data Breach Just Two Days Ago*, COMPUTERWORLD                    (Sept.                    22,                    2016), http://www.computerworld.com/article/3123063/cybercrime-hacking/verizon-learned-of-massive-yahoo-data-breach-just-two-days-ago.html (last visited Oct. 13, 2016).

Yahoo CEO Marissa Mayer knew about the breach in July 2016, before telling Verizon that the Company had not been the subject of a breach.

8.    Plaintiff and Class members must now take matters into their own hands to protect themselves from fraud. Indeed, although the Company has stated that the "ongoing investigation" suggests that the stolen information did not include payment card data or bank account information,[4] Yahoo has nevertheless encouraged its users to consider placing a "security freeze" (also known as a "credit freeze") on their credit files. A security freeze is designed to prevent potential creditors from accessing an individual's credit file at the consumer reporting agencies without the individual's consent, and, according to Yahoo's notice to its users, costs roughly between $5 and $20 per freeze. Yahoo has offered no financial assistance for such a security freeze to its users.

9.    In addition, countless Yahoo users are reporting that Yahoo or its authorized technicians are demanding payment of several hundred dollars for 1-3 years of "security protection" in order to access their hacked, blocked accounts.

10.    Furthermore, in the wake of the data breach, Yahoo has disabled automatic email forwarding, preventing users who want to leave because of the recent hacking and surveillance revelations from being able to switch to a rival service.  Yahoo has reported that it is "work[ing] to improve" its email forwarding service, but information technology experts note that "[t]his is all extremely suspicious timing," especially given that email forwarding has been a service available to Yahoo users for over a decade and only now, and only at Yahoo, is it "under development."[5]

11.    Plaintiff brings this class action lawsuit against Yahoo for failing to adequately safeguard his and others' personal information. Plaintiff seeks judgment

---

[4] Plaintiff does not state this as a definitive fact.

[5] *See* Associated Press, *Amid Hacking and Data Breach, Some Yahoo Users Finding it Hard to Exit* (Oct. 11, 2016), *available at* http://indianexpress.com/article/technology/tech-news-technology/amid-hacking-and-data-breach-some-yahoo-users-finding-it-hard-to-exit/ (last visited Oct. 13, 2016).

requiring Yahoo to remedy the harm caused by its misconduct, which includes compensating Plaintiff and Class members for resulting account fraud and for all reasonably necessary measures Plaintiff and Class members have had to take in order to identify and safeguard the accounts put at risk by Yahoo's grossly negligent security. Plaintiff further seeks a declaratory judgment declaring unenforceable the limitation of liability clause in Yahoo's Terms of Service.[6]

## PARTIES

12.     Plaintiff Adam Savett is a natural person and a resident and citizen of Cuyahoga County, Ohio. Mr. Savett is one of the approximately 500 million Yahoo users whose personal information was stolen because Yahoo was reckless in failing to secure such information. Mr. Savett's information has already been compromised and he has had attempted sign-ins by third parties to his account as a direct result of Yahoo's misconduct.

13.     Defendant Yahoo is a Delaware corporation headquartered at 701 First Avenue, Sunnyvale, California 94089. Yahoo is a citizen of California. Yahoo does business throughout the State of California and the United States. Yahoo maintains a substantial portion of its computer systems in California.

## JURISDICTION AND VENUE

14.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(d) because (i) the proposed Class consists of well over 100 members; (ii) the parties are minimally diverse, as members of the proposed Class, including Plaintiff, are citizens of a state different from Defendant's home state; and (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.

15.     This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Yahoo because it maintains its principal headquarters in California, regularly conducts business in California, and has sufficient minimum contacts in California. In

[6] Yahoo Terms of Service (Mar. 12, 2012), https://policies.yahoo.com/us/en/yahoo/terms/utos/ (last visited Oct. 17, 2016).

1   addition, Plaintiff's claims arise out of Defendant's conducting and transacting

2   business in California, and many of the actions giving rise to the Complaint took

3   place in this District.

4       16.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because

5   Yahoo is resident of this District and is subject to this Court's personal jurisdiction,

6   and because Yahoo's Terms of Service require the case to be brought here.[7] Yahoo

7   is registered to conduct business throughout California, regularly conducts business

8   in this District, and maintains an office in this District. In addition, the causes of

9   action arose, in substantial part, in this District.

10                          **FACTUAL ALLEGATIONS**

11      17.     Yahoo operates a host of Internet websites and services, including web

12  portal, search engine and e-mail service, among others, which have had their security

13  systems breached before.  In July 2012, a group of hackers based in Eastern Europe

14  breached Yahoo's security measures and extracted e-mail addresses and passwords

15  that were stored unencrypted within a Yahoo database. The hackers then posted

16  these login credentials online, in an effort to expose Yahoo's lax security measures.

17  This prior breach sets the background for Yahoo's ongoing failures in security and

18  that it was on notice that its security systems were vulnerable.

19      18.     Yahoo guarantees its users that it will take certain specific steps to

20  protect the personal, private information Yahoo requires an individual provide the

21  Company in order to create an account. Specifically, Yahoo promises on its website

22  and in its Privacy Policy:

23          •   to "take[] your privacy seriously";

24          •   to "limit access to personal information about you to employees who

25              we believe reasonably need to come into contact with that information

26              to provide products or services to you or in order to do their jobs"; and

27

28

_____

[7] *Id.*

- 5 -
COMPLAINT

- to "have physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information about you."[8]

19. Yahoo claims that it first learned of a potentially massive data breach at some point during the summer of 2016, when hackers posted to underground online forums certain data that they claimed was obtained from Yahoo. Yahoo claims that it was not clear whether the data came from Yahoo itself, or from a third-party service, so Yahoo launched an investigation, but was unable to confirm whether the stolen data had originated from a breach at Yahoo.

20. Although the Company says that it did not find evidence that the stolen data came from its own systems, it did find evidence of a far more serious breach: according to Yahoo, in 2014, a state-sponsored actor stole account information associated with approximately 500 million Yahoo users.

21. On September 22, 2016, Yahoo issued a press release announcing that its internal investigation had confirmed that account information associated with *at least 500 million user accounts* had been stolen. The press release stated, in part, as follows:

> A recent investigation by Yahoo! Inc. (NASDAQ:YHOO) has confirmed that a copy of certain user account information was stolen from the company's network in late 2014 by what it believes is a state-sponsored actor. The account information may have included names, email addresses, telephone numbers, dates of birth, hashed passwords (the vast majority with bcrypt) and, in some cases, encrypted or unencrypted security questions and answers. The ongoing investigation suggests that stolen information did not include unprotected passwords, payment card data, or bank account information; payment card data and bank account information are not stored in the system that the investigation has found to be affected. Based on the ongoing investigation, Yahoo believes that information associated with at least 500 million user accounts was stolen and the investigation has found no evidence that the state-sponsored actor is currently in Yahoo's network. Yahoo is working closely with law enforcement on this matter.
>
> Yahoo is notifying potentially affected users and has taken steps to secure their accounts. These steps include invalidating unencrypted security questions and answers so that they cannot be used to access an account and asking potentially affected users to change their passwords.

---

[8] Yahoo, *Yahoo Privacy Center* (Aug. 30, 2016), https://policies.yahoo.com/us/en/yahoo/privacy/index.htm (last visited Oct. 13, 2016).

Yahoo is also recommending that users who haven't changed their passwords since 2014 do so.

Yahoo encourages users to review their online accounts for suspicious activity and to change their password and security questions and answers for any other accounts on which they use the same or similar information used for their Yahoo account. The company further recommends that users avoid clicking on links or downloading attachments from suspicious emails and that they be cautious of unsolicited communications that ask for personal information. Additionally, Yahoo asks users to consider using Yahoo Account Key, a simple authentication tool that eliminates the need to use a password altogether.

Online intrusions and thefts by state-sponsored actors have become increasingly common across the technology industry. Yahoo and other companies have launched programs to detect and notify users when a company strongly suspects that a state-sponsored actor has Yahooed an account. Since the inception of Yahoo's program in December 2015, independent of the recent investigation, approximately 10,000 users have received such a notice.[9]

22.    Numerous articles discussing the data breach immediately followed. Indeed, *The New York Times* published an article that same day, titled "Yahoo Says Hackers Stole Data on 500 Million Users in 2014," which quoted security experts who explained that the Yahoo data breach could have major consequences:

"The stolen Yahoo data is critical because it not only leads to a single system but to users' connections to their banks, social media profiles, other financial services and users' friends and family," said Alex Holden, the founder of Hold Security, which has been tracking the flow of stolen Yahoo credentials on the underground web. "This is one of the biggest breaches of people's privacy and very far reaching."[10]

23.    Other reports indicate that this was the largest data breach from a single site in history.[11]

24.    The consequences of the Yahoo data breach will be significant, and the breach demonstrates that the Company has, by acting with reckless disregard for the security of its users' personal information that it promised to protect, utterly failed to implement reasonable security measures to protect its users' sensitive personal

---

[9] *See supra* note 1.
[10] Nicole Perlroth, *Yahoo Says Hackers Stole Date on 500 Million Users in 2014*, N.Y. TIMES (Sept. 22, 2016), http://www.nytimes.com/2016/09/23/technology/yahoo-hackers.html?_r=0 (last visited Oct. 13, 2016).
[11] *See supra* note 2.

1   information, despite the Company being the target of data breaches in the past, and

2   despite the fact that the sheer volume of data it stores should trigger knowledge that

3   security is paramount. As a result of Defendant's reckless conduct and failure to

4   establish and implement basic data security protocols, despite its knowledge and the

5   warnings of prior data breaches, its users' personal information is now in the hands

6   of criminals, subjecting Plaintiff and the Class to the serious risk of identity theft in

7   a wide variety of forms.

8       25.    What is worse, despite the fact that the attack took place in late 2014,

9   Yahoo was so reckless in securing its users' personal information that it says that it

10  did not even discover the incident until the summer of 2016 – ***nearly two years after***

11  ***the attack***. This is an unusually long time to identify a hacking incident. Indeed,

12  according to the Ponemon Institute, which tracks data breaches, the average time it

13  takes organizations to identify a data breach is 191 days, and the average time it

14  takes to contain a breach is 58 days after discovery.[12]

15      26.    In Yahoo's September 22, 2016, press release announcing the attack,

16  the Company provided a link to a Yahoo Account Security Notice.

17      27.    Also available after following the link provided in the press release was

18  a page detailing Account Security Issues Frequently Asked Questions.[13] The FAQs

19  provided additional background on the data breach and offered suggestions on how

20  Yahoo users could secure accounts.

21      28.    One recommendation was that users place a "security freeze" (also

22  known as a "credit freeze") on their credit files. A security freeze is designed to

23  prevent potential creditors from accessing an individual's credit file at the consumer

24  reporting agencies without the individual's consent, and costs roughly between $5

25  and $20 per freeze. The Company provided instructions on how to implement a

---

[12] *Id.*

[13]     Yahoo, *Account Security Issue FAQs* (Sept. 22, 2016), https://help.yahoo.com/kb/account/SLN27925.html?impressions=true (last visited Oct. 13, 2016).

security freeze and provided additional details on what the security-freeze process entails, but offered no financial assistance.

29.   Plaintiff and Class members have expended or will be required to expend substantial sums of money as a direct result of the data breach. Plaintiff, and other Class members should be compensated by Yahoo for their expenses in light of Yahoo's failure to adequately secure its users' personal information.

30.   Plaintiff has been a Yahoo user continually since approximately 2001 and has been damaged as a result of the data breach that Yahoo announced on September 22, 2016.

31.   Plaintiff's Yahoo account has been hacked by criminals, and he has a reasonably held belief that his identity has been compromised, and is at an increased risk for credit and identity theft, and suffers from anxiety knowing that criminal hackers now possess his personal information. Plaintiff has received notices from Yahoo in the wake of the breach that his accounts have been accessed by foreign hackers, and has received a notice contemporaneously that one of his credit cards was subject to a data breach.

**CLASS ACTION ALLEGATIONS**

32.   Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") on behalf of himself and a class of other similarly situated individuals (the "Class"), as defined specifically below:

> All persons within the United States whose personal information was accessed following the data breach that Yahoo announced in a press release on September 22, 2016.

33.   Plaintiff also brings this action under the statutory and common laws of his state of residence on behalf of himself and a class of other similarly situated individuals, as defined as:

> All persons within the state of Ohio whose personal information was accessed following the data breach that Yahoo announced in a press release on September 22, 2016 (the "Ohio Class").

34.     Excluded from the Class is Defendant; any person who is an officer, director, partner or controlling person of Defendant, including any of its subsidiaries or affiliates; any entity in which Defendant has a controlling interest; and the legal representatives, heirs, successors and assigns of any such excluded person or entity.

35.     Plaintiff satisfies the numerosity, commonality, typicality, and adequacy prerequisites pursuant to Fed. R. Civ. P. 23 for suing as a representative party.

36.     **Numerosity.** Yahoo has stated publicly that approximately 500 million of its users were affected by this data breach, and according to public records there were more than 80 million Yahoo users in the United States alone during 2014 when the breach occurred. Joinder is therefore impracticable and the numerosity requirement of Rule 23 is satisfied.

37.     **Commonality.** Plaintiff and Class members' claims raise predominately common factual and legal questions that can be answered for all Class members through a single class-wide proceeding. For example, to resolve any Class member's claims, including Plaintiff's, it will be necessary to answer the following questions, and the answer to each of these questions will necessarily be the same for each Class member:

(a)     whether Defendant owed a duty of care to Plaintiff and the Class with respect to the security of their personal information;

(b)     whether Defendant acted with reckless disregard for the safety and security of the personal information it promised to protect by failing to establish appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of records and to protect against known and anticipated threats or hazards to the security and integrity of these records;

(c)     whether the Defendant's conduct was reckless or intentional;

(d)     whether Defendant acted appropriately in securing Plaintiff and Class members' personal information;

(e)     whether Defendant violated the consumer protection laws of Ohio;

(f)     whether Defendant violated California law; and

(g)     whether Plaintiff and Class members are entitled to damages, declaratory and/or injunctive relief.

38.     **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class. Among other things, Plaintiff and Class members provided personal information that was stored on Defendant's systems because they are users of Yahoo's services. In addition, Plaintiff's claims are typical of Class members' claims as each arises from the same data breach and the same alleged reckless conduct on the part of Yahoo in handling the Class members' personal information.

39.     **Adequacy.** Plaintiff will adequately represent the proposed Class members. Plaintiff has retained counsel competent and experienced in class action and privacy litigation and intends to pursue this action vigorously. Plaintiff has no interests contrary to or in conflict with the interests of Class members.

40.     In addition to satisfying the prerequisites of Rule 23(a), Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual members and a class action is superior to individual litigation. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT I

### Gross Negligence

41.     Plaintiff incorporates the above allegations by reference.

42.     By maintaining their personal information in a database that was accessible through the Internet, Yahoo owed Plaintiff and Class members a duty of care to employ reasonable Internet security measures to protect this information.

43.     Defendant, with reckless disregard for the safety and security of users' personal information it was entrusted with, breached the duty of care owed to Plaintiff and the Class by failing to implement reasonable security measures to protect its users' sensitive personal information. In failing to employ these basic and well-known Internet security measures, Yahoo departed from the reasonable standard of care and violated its duty to protect Plaintiff's and Class members' personal information. Defendant further breached its duty of care by allowing the breach to continue undetected and unimpeded for nearly two years after the hackers first gained access to Defendant's systems.

44.     The unauthorized access to Plaintiff's and Class members' personal information was reasonably foreseeable to Yahoo, particularly considering that the method of access is widely known in the computer and data security industry, and that it has long been standard practice in the Internet technology sector to encrypt personal information, including critical login credentials.

45.     Neither Plaintiff nor other Class members contributed to the security breach or Yahoo's employment of insufficient security measures to safeguard personal information.

46.     As a direct and proximate cause of Yahoo's reckless conduct, Plaintiff and Class members suffered injury through the public disclosure of their personal information, the unauthorized access to Internet accounts containing additional personal information, and through the heightened risk of unauthorized persons stealing additional personal information. Plaintiff and Class members have also incurred the cost of taking measures to identify and safeguard accounts put at risk by disclosure of the personal information stolen from Yahoo, including placing a security freeze on their credit files.

## COUNT II

### Bailment

47.     Plaintiff incorporates the above allegations by reference.

48.     Plaintiff and members of the Class delivered their personal information to Yahoo for the exclusive purpose of creating a Yahoo account.

49.     In delivering their personal and financial information to Yahoo, Plaintiff and Class members intended and understood that Yahoo would adequately safeguard their personal information.

50.     Yahoo accepted possession of Plaintiff's and Class members' personal information for the purpose of creating a Yahoo user account.

51.     By accepting possession of Plaintiff's and Class members' personal information, Yahoo understood that Plaintiff and Class members expected Yahoo to adequately safeguard their personal information. Accordingly, a bailment (or deposit) was established for the mutual benefit of the parties.

52.     During the bailment (or deposit), Yahoo owed a duty to Plaintiff and Class members to exercise reasonable care, diligence and prudence in protecting their personal information.

53.     Yahoo breached its duty of care by failing to take appropriate measures to safeguard and protect Plaintiff's and Class members' personal information, resulting in the unlawful and unauthorized access to and misuse of their personal information.

54.     Yahoo further breached its duty to safeguard Plaintiff's and Class members' personal information by failing to timely and accurately notify them that their information had been compromised as a result of the Yahoo data breach.

55.     As a direct and proximate result of Yahoo's breach of its duty, Plaintiff and Class members suffered consequential damages that were reasonably foreseeable to Yahoo, including but not limited to the damages set forth herein.

56.     As a direct and proximate result of Yahoo's breach of its duty, the personal information of Plaintiff and Class members entrusted to Yahoo during the bailment (or deposit) was damaged and its value diminished.

## COUNT III

## Breach of Implied Contract

57.     Plaintiff incorporates the above allegations by reference.

58.     When Plaintiff and members of the Class provided their personal information to Yahoo in order to create an account, Plaintiff and members of the Class entered into implied contracts with Yahoo pursuant to which Yahoo agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class members that their data had been breached and compromised.

59.     Yahoo solicited and invited Plaintiff and members of the Class to create an account with Yahoo and required the provision of very personal, private information in order to do so. Plaintiff and members of the Class accepted Yahoo's offer and obtained accounts that were active and in-use during the period of the Yahoo data breach.

60.     The provision of personal information to Yahoo by Plaintiff and members of the Class was made pursuant to the mutually agreed upon implied contract with Yahoo under which Yahoo agreed to safeguard and protect Plaintiff's and Class members' personal information, and to timely and accurately notify them that such information was compromised and breached.

61.     Plaintiff and Class members would not have provided and entrusted their personal information to Yahoo in order to open a Yahoo account in the absence of the implied contract between them and Yahoo.

62.     Plaintiff and members of the Class fully performed their obligations under the implied contract with Yahoo.

63.     Yahoo breached the implied contracts it made with Plaintiff and Class members by failing to safeguard and protect the personal information of Plaintiff and members of the Class and by failing to provide timely and accurate notice to them that their personal information was compromised in and as a result of the Yahoo data breach.

64.     The losses and damages sustained by Plaintiff and Class members as described above were the direct and approximate result of Yahoo's breaches of the implied contracts between Yahoo and Plaintiff and members of the Class.

## COUNT IV

### Breach of Express Contract

65.     Plaintiff incorporates the above allegations by reference.

66.     Yahoo offered services to consumers pursuant to a Privacy Policy.

67.     Plaintiff and the Class are subject to an agreement with Yahoo called the Terms of Service. Yahoo incorporates its Privacy Policy into the terms of the Terms of Service. As a condition of opening a Yahoo account, Plaintiff and the Class are subject to the terms of the Terms of Service and the Privacy Policy incorporated therein.

68.     The Terms of Service provides: "Registration Data and certain other information about you are subject to our applicable privacy policy."

69.     The Privacy Policy states that Yahoo will:

- "limit access to personal information about you to employees who we believe reasonably need to come into contact with that information to provide products or services to you or in order to do their jobs"; and

- "have physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information about you."

70.     Plaintiff and the Class were made subject to the uniform, common terms of the above agreements and documents.

71.     Plaintiff and members of the Class fully performed their obligations under the above agreements and documents.

72.     Yahoo breached the Terms of Service and Privacy Policy. Contrary to the terms of the agreements, and by engaging in the conduct set forth in this Complaint, Yahoo did not protect its customers' personal information from unauthorized access and use and Yahoo did not use measures, including computer

1 | safeguards and secured files and buildings, to protect Plaintiff's and Class members'
2 | personal information from unauthorized access and use.

3 |     73.    Plaintiff and the Class had active Yahoo accounts during the period of
4 | the Yahoo data breach. Their Yahoo accounts were compromised in and as a result
5 | of the Yahoo data breach. Plaintiff and members of the Class suffered damages and
6 | losses as described herein.

7 |     74.    The damages and losses sustained by Plaintiff and members of the Class
8 | are the direct and proximate result of Yahoo's breaches of the Terms of Service and
9 | Privacy Policy.

10 | **COUNT V**

11 | **Violation of Ohio Consumer Sales Practices Act,**

12 | **Ohio Rev. Code Ann. §§ 1345.02(A) and (B)(1) and (2), *et seq.***

13 |     75.    Plaintiff incorporates the above allegations by reference.

14 |     76.    Yahoo, Plaintiff, and members of the Ohio Class each constitute a
15 | "person" within the meaning of Ohio Rev. Code Ann. § 1345.01(B).

16 |     77.    Yahoo constitutes a "supplier" within the meaning of Ohio Rev. Code
17 | Ann. § 1345.01(C).

18 |     78.    The Ohio Consumer Sales Practices Act ("Ohio CPSA") provides that
19 | a supplier may not engage in any unfair or deceptive trade practice in the sale of any
20 | consumer goods or services. Ohio Rev. Code Ann. § 1345.02(A). Yahoo participated
21 | in misleading, false, or deceptive acts that violated the Ohio CPSA.

22 |     79.    In the course of its business, Yahoo concealed and suppressed material
23 | facts concerning the adequacy of Yahoo's ability to secure users' personal
24 | information. Plaintiff and members of the Ohio Class had no way of discerning that
25 | Yahoo's representations were false and misleading. Plaintiff and members of the
26 | Ohio Class did not and could not discover Yahoo's deception on their own.

27 |     80.    Yahoo thus violated the Ohio CPSA by, at minimum: employing
28 | deception, deceptive acts or practices, fraud, misrepresentations, or concealment,

suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the creation of Yahoo accounts by consumers.

81.     Yahoo engaged in misleading, false, unfair or deceptive acts or practices that violated the Ohio CPSA by failing to disclose and actively concealing the inadequate security measures in place to protect personal information provided to Yahoo by users.

82.     Yahoo's actions as set forth above occurred in the conduct of trade or commerce.

83.     Yahoo knew the true nature of its unsecure network when it was hacked several years before 2014.

84.     Yahoo intentionally and knowingly misrepresented material facts regarding its ability to adequately safeguard and secure users' personal information with intent to mislead Plaintiff and members of the Ohio Class.

85.     Yahoo knew or should have known that its conduct violated the Ohio CPSA.

86.     Yahoo owed Plaintiff and members of the Ohio Class a duty to disclose security risks of its network because it possessed exclusive knowledge that its network was unsecure and vulnerable to outside hackers.

87.     Yahoo concealed the security risks of its network, resulting in substantial loss of private information and money by Plaintiff and members of the Ohio Class.

88.     Yahoo's concealment of the unsecured nature of its network and inability to safeguard personal information were material to Plaintiff and members of the Ohio Class.

89.     Yahoo's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and members of the Ohio Class, about the true nature of its unsecured network.

90.     Plaintiff and members of the Ohio Class suffered ascertainable loss and actual damages as a direct and proximate result of Yahoo's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and members of the Ohio Class who created Yahoo accounts and provided their personal information to do so would not have created a Yahoo account at all if the true nature of Yahoo's network had been disclosed.

91.     Yahoo had an ongoing duty to all Yahoo account holders to refrain from unfair and deceptive practices under the Ohio CPSA. All Yahoo account holders in Ohio suffered ascertainable loss in the form of loss of use of their personal information and payment of money for credit and/or identity protection as a result of Yahoo's deceptive and unfair acts and practices made in the course of Yahoo's business.

92.     As a result of Yahoo's violations of the Ohio CPSA, Plaintiff and members of the Ohio Class have suffered injury-in-fact and/or actual damage.

93.     Pursuant to Ohio Rev. Code Ann. § 1345.09(A), Plaintiff and members of the Ohio Class seek actual economic damages, noneconomic damages, attorneys' fees, and any other just and proper relief available under the Ohio CPSA.

## COUNT VI

## Violation of California's Unfair Competition Law

## Cal. Bus. & Prof. Code §17200, *et seq.*

94.     Plaintiff incorporate the above allegations by reference.

95.     California Business and Professions Code §17200 prohibits any "unlawful, unfair, or fraudulent business act or practices." Yahoo has engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL.

96.     Yahoo's conduct, as described herein, was and is in violation of the UCL. Yahoo's conduct violates the UCL in at least the following ways:

(a)  by concealing from Plaintiff and the other Class members that Yahoo's network was unsecure and could not adequately safeguard their personal, private information;

(b)  by marketing Yahoo by falsely claiming that Yahoo would "limit access to personal information about you to employees who we believe reasonably need to come into contact with that information to provide products or services to you or in order to do their jobs"; and

(c)  by marketing Yahoo by falsely claiming to "have physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information about you."

97.  Yahoo's misrepresentations and omissions alleged herein caused Plaintiff and the other Class members to create accounts with Yahoo. Absent those misrepresentations and omissions, Plaintiff and the other Class members would not have created Yahoo accounts and provided their sensitive information to Yahoo.

98.  Accordingly, Plaintiff and the other Class members have suffered injury in fact including lost money or property as a result of Yahoo's misrepresentations and omissions.

99.  Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Yahoo under Cal. Bus. & Prof. Code §17200.

100.  Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Yahoo from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and members of the Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code §17203 and Cal. Bus. & Prof. Code §3345; and for such other relief set forth below.

## COUNT VII

### Declaratory Relief

101.  Plaintiff incorporates the above allegations by reference.

102.   There is an active case and controversy among Plaintiff on the one hand, and Yahoo on the other.

103.   Pursuant to 28 U.S.C. §2201, Plaintiff seek a declaration as to the following:

(a)   That, to the extent Plaintiff's claims herein are covered by Yahoo's Terms of Service, Section 20 of Yahoo's Terms of Service, purporting to limit Yahoo's liability for, inter alia, "unauthorized access to . . . your data," is unenforceable because it is against public policy and both procedurally and substantive unconscionable; and

(b)   That, to the extent Plaintiff's claims herein are covered by Yahoo's Terms of Service, Section 20 of Yahoo's Terms of Service is unenforceable because it violates Cal. Civ. Code § 1668 and/or Cal. Com. Code § 2719.

104.   Plaintiff is in doubt as to whether Yahoo's Terms of Service apply to his claims and whether, if so, the limitation of liability clause therein is lawful and enforceable under California law.

105.   There is a bona fide dispute between the parties hereto, and Plaintiff has and does raise justiciable issues as to the existence or non-existence of his rights, powers, obligations, and legal relations with Yahoo by virtue of the Terms of Service, this complaint, and the applicable statutes and rules of this state.

106.   Plaintiff and the Class in doubt as to their rights, powers, obligations, and legal relations and there is an actual and present need for a declaratory judgment as to the issues set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class and state law classes, respectfully request that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing his counsel as Class Counsel;

B.  Awarding damages, including, but not limited to, compensatory, statutory, and punitive damages, to Plaintiff and Class members in an amount to be determined at trial;

C.  Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class;

D.  Declaring unenforceable Section 20 of Yahoo's Terms of Service;

E.  Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.  Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G.  Awarding such other and further relief as equity and justice may require.

**JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

DATED: October 25, 2016                     Respectfully submitted,


                                            /s/ *Todd D. Carpenter*
                                            **CARLSON LYNCH SWEET KILPELA**
                                            **& CARPTENTER, LLP**
                                            Todd D. Carpenter
                                            402 West Broadway, 29th Floor
                                            San Diego, California 92101
                                            Telephone: 619-756-6994
                                            Facsimile: 619-756-6991
                                            tcarpenter@carlsonlynch.com

                                            Gary F. Lynch
                                            Jamisen A. Etzel
                                            1133 Penn Avenue
                                            5th Floor
                                            Pittsburgh, PA 15222
                                            Telephone:  (412) 253-6307
                                            Facsimile:  (412) 231-0246

1
2

glynch@carlsonlynch.com
jetzel@carlsonlynch.com

3
4
5
6
7
8
9
10

Karen Hanson Riebel
Kate M. Baxter-Kauf
**LOCKRIDGE      GRINDAL      NAUEN
PLLP**
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Telephone: 612-596-4097
Facsimile: 612-339-0981
khriebel@locklaw.com
kmbaxter-kauf@locklaw.com

11

**Attorneys for Plaintiff**

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28